IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRAULIO ARROYO LORENZO,

    Plaintiff,

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 14- 1697 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Braulio Arroyo Lorenzo ("Plaintiff") filed this action to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for child's insurance disability benefits. (Docket No. 1).[1] In order to be entitled to these special benefits, a child of an individual who dies fully or currently insured shall be entitled to child's insurance benefits if: (1) he has filed an application for such benefits; (2) at the time of the application, was unmarried and under a disability, as defined in 42 U.S.C. § 423(d), which began before he attained the age of twenty-two; and (3) was dependent upon the individual at the time of his death.   42 U.S.C. § 402(d)(1).

On September 19, 2014, the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket No. 6).[2]

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner.   "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing".   Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases.   Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

On February 23, 2015, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 9 and 10). On June 25, 2015, Plaintiff filed his memorandum of law (Docket No. 20) and on August 10, 2015, the Commissioner filed her memorandum of law. (Docket No. 23). After careful review, the Court REMANDS the present case to the Administrative Law Judge ("ALJ").

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff filed the present application for disability benefits on June 24, 2011, with an alleged onset date of disability of January 1, 1992. The application was initially denied, as was the reconsideration. (Tr. pp. 259-65). Plaintiff then requested an administrative hearing, which was held on April 9, 2013, where Plaintiff was present with counsel and testified regarding his alleged disabilities. (Tr. pp. 29-56). His mother also testified on his behalf. Id. On June 7, 2013, the presiding ALJ issued an opinion, and found Plaintiff was not disabled. (Tr. pp. 15-24). As part of her decision, the ALJ made the following findings of fact:

1. Born on March 28, 1978, Plaintiff had not attained age 22 as of January 1, 1992, the alleged onset date.

2. Plaintiff had not engaged in substantial gainful activity since January 1, 1992, the alleged disability onset date.

3. Prior to attaining age 22, Plaintiff had the following severe impairment: moderate learning disorder and a depressive disorder.

4. Prior to attaining age 22, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the record, prior to attaining age 22, Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can perform simple, routine and repetitive work.

6. Plaintiff had no past relevant work.

7. Plaintiff was born on March 28, 1978, and was 13 years old, which is defined as a younger individual, age 18-49, on the alleged onset date.

8. Plaintiff had at least a high school education and was unable to communicate in English.

9. Transferability of job skills was not an issue because Plaintiff did not have past relevant work.

10. Prior to attaining age 22, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.[3]

11. Plaintiff had not been under a disability, as defined in the Social Security Act, at any time prior to March 27, 2000, the date he attained age 22.

---

[3] At the hearing, the ALJ found that Plaintiff could perform jobs as a small products assembler, fast food worker or hand packager.

After analyzing all the factors, the ALJ opined that Plaintiff had the capacity for simple, routine, and repetitive work, and concluded that Plaintiff was therefore not disabled. (Tr. pp. 21, 24). The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-5).

Plaintiff objects the ALJ's final decision denying him disability benefits, alleging that she failed to adequately assess his residual mental functional capacity and failed to rely on the totality of the evidence regarding this issue, and this, in turn, served to undermine the hypothetical questions posed to the Vocational Expert ("VE"). Therefore, Plaintiff argues the ALJ's decision was not based on substantial evidence. The Commissioner, on the other hand, asserts there is substantial evidence to support the ALJ's conclusion, and the hypotheticals posed to the VE were correctly premised on that substantial evidence.

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous

work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the

impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f).

In the case at bar, at steps 4 and 5, the ALJ determined that there was no past work that Plaintiff could return to because he had not performed any substantial work, but was nevertheless able to perform other jobs that were available in the national economy.

**LEGAL ANALYSIS**

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable

mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

In order to satisfy the disability requirement for child's insurance benefits, the disability must have existed on the claimant's 22nd birthday and must have continued through the date of his or her application for benefits. Clifford v. Colvin, No. 11-798, 2015 WL 5673000, at *1 (W.D. Wis. Sept. 25, 2015); see also Smolen v. Chater, 80 F.3d 1273, 1280 (9th Cir. 1996) ("Other circuits have held, and we agree, that the claimant must be disabled continuously and without interruption beginning before her twenty-second birthday until the time she applied for child's disability insurance benefits"); Suárez v. Secretary of Health and Human Servs., 755 F.2d 1, 3 (1st Cir. 1985); and Reading v. Mathews, 542 F.2d 993, 997 (7th Cir. 1976). Therefore, Plaintiff must prove that he was disabled continuously from age 22 until the date he applied for benefits, or June 24, 2011.

Plaintiff's main argument is that the ALJ failed to adequately assess all the medical evidence when he failed to consider Plaintiff's overall mental picture and symptoms, which therefore translated into incomplete hypothetical questions to the VE. It is important to note that courts must give deference to the ALJ's interpretation of the medical record, and although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this

Court to resolve them. See Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222.

It has long been held, however, that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir. 1987). "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)) see also Tennant v. Schweiker, 682 F.2d 707, 711 (8th Cir. 1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts … should precisely set out the claimant's particular physical and mental impairments.").

The Court agrees that the ALJ's conclusion is not supported by substantial evidence, and that Plaintiff's mental issues were not fully considered. Therefore, the hypotheticals given to the VE were in error and the VE's conclusion was consequently also in error.

An evaluation performed in 1992 due to poor academic performance showed Plaintiff insecure, introverted, nervous and shy, uninterested and hypoactive. (Tr. p. 88). Plaintiff was 14 years of age at the time. The examiner concluded Plaintiff had a pattern of learning disability, and his scores showed an IQ score of 79, which is considered borderline retarded. (Tr. p. 89).

The ALJ spent a great deal of time discussing the fact that, prior to age 18, Plaintiff seemed to have been doing well in school and that he could read, did not omit, add or substitute letters, wrote legibly, capitalized words and could multiply up to 6. (Tr. p. 22). The basis of her opinion was an evaluation performed in 1994 when Plaintiff was 16 years old. Yet, the same evaluation also showed that Plaintiff did not use some letters of the alphabet correctly, that his comprehension level did not match his age grade, and that he had difficulties with math and could not divide when the problem was over three digits long. (Tr. p. 249). This shows clear problems with the knowledge that a typical 16 year old boy should possess. The evaluator at that time concluded the written evaluation by stating that Plaintiff showed "moderate deficiency in almost all evaluated areas", a marked difference between verbal and performance scales, lacked interest in school because of his shyness and underachievement, and had a verbal learning problem pattern. (Tr. p. 250).

The ALJ further noted that Plaintiff "had no difficulties in elementary school when he received good grades". (Tr. p. 22). Yet, the record is clear that, when Plaintiff was younger, he had no significant problems. The problems became more visible and acute when his mother was forced to withdraw him from school and place him in a vocational

school, around the 10th grade, because he failed high school. Even with a vocational interest, Plaintiff managed to graduate from this vocational school with a GED, despite many learning hardships. (Tr. p. 207). Plaintiff showed deficiencies in all school areas beginning in 9th grade, in both academic and vocational areas. (Id. and Tr. p.215). Although Plaintiff got along well with family members, he did not have relationships with other adults. (Tr. p. 213).

Moving on to more current evaluations, agency consultant Dr. Luis Cortés Ruiz ('Dr. Cortés") examined Plaintiff in 2009 and he showed an IQ of 87, an improvement from before, but still in a low average functioning level. (Tr. p. 191). Although the ALJ gave "great weight" to his opinion and stated that his conclusions were consistent with the evidence of the record, Dr. Cortés' evaluation showed quite the opposite. (Tr. p. 23). Dr. Cortés opined that Plaintiff was "presenting emotional indicators associated with depressive symptoms, low self-esteem, social isolation, and difficulty making every day decisions if he does not have paternal reaffirmation. A general pattern of distancing himself from social relations is noted, as well as a restriction of the emotional expressions in the interpersonal area. These conditions cause him a deterioration in the social and work aspects of his life as well as in other important areas", and that "Braulio is presenting behaviors associated with a clinical profile of Schizoid Personality Disorder (provisional diagnostic impression) and a Learning Disorder". (Tr. p. 192).

Although the record is somewhat scant for the years 1994-2006, it further reveals that Plaintiff has had four jobs of short duration from 2006-2013, which he was unable to maintain due to his condition. From 1997 through 2013, Plaintiff worked as a number

yard employee for six months (in a non-skilled job); as a draftsman for three months; performed office work for several months; and lastly, at a hotel doing maintenance work. (Tr. pp. 34-35). Plaintiff was dismissed from all of these jobs because he had trouble remembering what was asked of him and he needed constant follow up. Id. Indeed, in Plaintiff's last job as a maintenance worker at Hotel Guajataca, the Manager stated as recently as in 2013, that Plaintiff "needs supervision all 8 hours of work. He is not fit to work in the hotel industry". (Tr. p. 74). Plaintiff also finished some drafting courses but was unable to obtain his certification. (Tr. p. 35).

A Psychiatric Review Technique performed in December 2011 showed Plaintiff moderately limited in maintaining social functioning and concentration, persistence or pace. (Tr. p. 517). Yet, both agency consulting non-examining physicians are the only ones who seem to suggest that Plaintiff is capable of performing substantial gainful activity. Dr. Cortés, the agency examining physician, concluded quite the opposite, to wit, that Plaintiff was depressed, had difficulty making every day decisions, and had low self-esteem and social isolation, among others, which in turn caused a deterioration in the social and work aspects of his life. (Tr. p. 192). This opinion is in line with most of the evidence on record, and in fact, while the Residual Functional Capacity Assessment ("RFC") performed by the non-examining agency physicians concluded that Plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision, that is the exact opposite that the manager from Hotel Guajataca concluded, who had personally supervised Plaintiff. The same was the case with all other jobs that Plaintiff had. The Court, and thus the ALJ, cannot rely on agency conclusions that are

not supported by the majority of the evidence in the record. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) ("The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician").

Further compounding this problem is the fact that the ALJ discarded the relevant records for psychological testing done in 1992, when Plaintiff was 14 years of age, which showed him to have a borderline retardation IQ. Instead, the ALJ concluded that the testing done seventeen years later, in 2009, was somehow more reliable, which of course, conveniently showed Plaintiff not as limited as previously found. (Tr. p. 18). Yet, the ALJ forgets that, in this particular case, the law requires her to assess, at least initially, whether Plaintiff had a disability *on or before age 22.* While the 2009 test would have been helpful in determining the second requirement, whether Plaintiff suffered a continuous disability from age 22 until the filing of his claim, the 1992 tests should have been immensely more valuable to determine Plaintiff's initial date of disability, and cannot be discarded only because they are different than those performed many years later by stating simply that "they are not valid". (Tr. p. 19). This conclusion by the ALJ is not commensurate with the weight of the evidence.

This error in turn, affected the ALJ's assessment of whether or not Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ concluded Plaintiff did not meet this criteria because she discarded the 1992 testing. Yet,

had the ALJ considered the 1992 testing, her decision suggests the outcome would have been different. Id.

Finally, it is worth noting that the ALJ had the opportunity to personally assess Plaintiff's demeanor at the hearing, thus allowing her an important opportunity to assess his credibility regarding his condition. She also heard testimony from Plaintiff's mother.

The record shows that, during the hearing, Plaintiff was unable to remember his social security number or his address, he did not know what a GED was (in spite of having obtained one (Tr. p. 38) and could not remember his doctor's name or the medications he was taking (Tr. p. 44). Plaintiff's mother testified that he could do some limited household chores, that he forgot to bathe, that if there was no towel in the bathroom, he would not dry himself, he failed to use soap to bathe if there was none in the shower, he did not pay attention to his diet and had high blood sugar[1], he needed to be pressured and reminded to take his medication, and he oftentimes left uneaten food in his room. (Tr. pp. 54-55).

While the ALJ found that Plaintiff could do some household chores, watched television and sometimes drive, this alone is not indicative of the fact that he can perform gainful activity. It is important to remember that, in evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's ability to work on a sustained basis. 20 CFR § 404.1512(a); see also Lester v. Chater, 81 F.3d at 833. Occasional symptom-free periods, and even the sporadic ability to work, are not

---

[1] This was further evidenced by the laboratory testing that was done between 2009 and 2011, which show extremely high glucose levels. Tr. pp. 124 (2011), 126 (2009), 131 (2009), 154 (2010), 157 (2010), 161 (2009), 167 (2011).

inconsistent with disability. See Poulin v. Bowen, 817 F.2d 865 (D.C. Cir. 1987); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir 2001)("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled").

Clearly, this medical evidence of record could support a possible finding of Plaintiff not being disabled, simply because "the responsibility of weighing conflicting evidence, where reasonable minds could differ as to the outcome, fall on the Commissioner and his designee, the ALJ." Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). However, on this record, the Court cannot find that the ALJ's conclusion that Plaintiff can work is sustained by substantial evidence, in particular, after she discarded the 1992 exams. This, in turn, affected the ALJ's subsequent analysis, and in ultimately, the hypotheticals posed to the VE.

In view of the above, the Court finds the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ must re-formulate her analysis of Plaintiff's ailments pursuant to 20 CFR Part 404, Subpart P, Appendix 1, taking into account all the relevant medical records, and if necessary and to the extent possible, attempting to supplement the record. The ALJ should then recalculate Plaintiff's residual functional capacity in light of this information.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence on the record. The Commissioner's decision is therefore REVERSED AND REMANDED for further proceedings consistent with this opinion.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 17th day of February, 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE